UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK DOUGLAS SMAGALA,

      Plaintiff,

v.                                        Case No. 1:22-cv-1152
                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

          Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

          On December 23, 2019, plaintiff filed an application for DIB alleging a disability onset date of October 23, 2019.  PageID.40.  Plaintiff identified his disabling conditions as two fractured vertebrae in the neck, one fractured vertebra in the back, anxiety, depression, and high blood pressure.  PageID.316.  Prior to applying for DIB, plaintiff completed an Associate's Degree in machine tool technology (a tool maker) and had past relevant work as: a machinist & tool repairer (composite job)[1]; a machine set up operator & machine shop supervisor (composite job);

---

[1] Social Security Ruling (SSR) 82-61, 1982 WL 31387 at *3, refers to the term "composite jobs" as follows, "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT [*Dictionary of Occupational Titles*]. Such situations will be evaluated according to the particular facts of each individual case." *See, e.g.*, *Smith v. Commissioner of Social Security*, No. 1:14-cv-920, 2015 WL 5592793 at *3 (W.D. Mich. Sept. 22, 2015).

a sales representative; a sales order clerk; and a sales order clerk & supervisor of order takers (composite job).  PageID.51, 72-73, 317.  An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on November 15, 2021. PageID.40-52.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.   LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the

[Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's application for DIB failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of October 23, 2019 and will meet the insured status requirements of the Social Security Act through December 31, 2024. PageID.42. At the second step, the ALJ found that plaintiff had severe impairments of: degeneration of the lumbar, thoracic, and cervical spine; cervical and lumbar fractures; and chronic deep vein thrombosis. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.45.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can occasionally lift and/or carry up to 10 pounds; stand/walk for 6 hours in a 8-hour day; occasionally push or pull with the bilateral upper and lower extremities; frequently reach in all directions, bilaterally; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; never work at unprotected heights or with moving mechanical parts; occasionally work with vibration, in extreme heat, or in extreme cold.

PageID.46.

At the fourth step, the ALJ found that plaintiff is capable of performing his past relevant work as a sales order clerk and the composite job of a sales order clerk & supervisor of

order takers, work which does not require the performance of work-related activities precluded by his residual functional capacity (RFC).  PageID.51.

Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 23, 2019 (the alleged disability onset date) through November 15, 2021 (the date of the decision).  PageID.52.

## III.   DISCUSSION

Plaintiff raises three errors on appeal.

**A.    The RFC is not supported by substantial evidence because the ALJ failed to explain his omission of limitations in adaptation and restrictions in concentration, persistence and pace in the RFC or in the dispositive hypothetical question, despite finding limitations in these areas at the Step 2 of the sequential evaluation process.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In evaluating an individual's RFC, the ALJ considers impairments that are both "severe" and "not severe", *see* 20 C.F.R. § 404.1545, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

Plaintiff contends that the ALJ erred because the RFC determination at step 4 did not include the step 2 findings that he had mild restrictions with respect to adapting or managing

himself, and with respect to concentration, persistence or pace ("CPP").  Plaintiff's Brief (ECF

No. 11, PageID.794).[2]

> At step 2, plaintiff had the burden of showing that he suffered from a severe

impairment which significantly limited his physical or mental ability to do basic work activities.

*See Heston*, 245 F.3 at 534.  Here, the ALJ applied the "paragraph B" criteria to determine whether

plaintiff had severe mental impairments of depression, anxiety, and substance addiction.   After

applying "the paragraph B" criteria, the ALJ concluded that these were not severe impairments:

> The claimant's medically determinable mental impairments of depression, anxiety, and substance addition, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

> In making this finding, I have considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. . . .

> With regard to concentrating, persisting or maintaining pace, the claimant has a mild limitation. Generally, this area of functioning refers to an individual's ability to focus attention on work activities and stay on tasks at a sustained rate. In this case, the claimant reported the abilities to complete most household chores such as cooking, cleaning, laundry, shopping, and trash removal. While he reported it took him longer to complete tasks due to physical pain, those limitations are accommodated for in the assessed residual functional capacity. There was no indication the claimant had limitations in this area due to his mental health. The overall medical record indicated relatively normal findings in this area (Ex. 5F pg. 5; 9F; 12F; 18F pg. 4; 27F pg. 9, 19, 30). Therefore, a mild limitation is supported.

> As for adapting or managing oneself, the claimant has experienced a mild limitation. Generally, this area of functioning refers to an individual's ability to regulate emotions, control behavior, care for themselves, and maintain well-being in a work setting.  In this case, the claimant reported experiencing some difficulty caring for personal-care activities on account of his physical impairments. However, there was no indication the claimant had limitations in this area due to his mental health. The overall medical record indicated relatively normal findings in this area (Ex. 5F pg. 5; 9F; 12F; 18F pg. 4; 27F pg. 9, 19, 30). Therefore, a mild limitation is supported.

---

[2] The Court notes that plaintiff sometimes refers to CCP in the conjunctive, *e.g.*, "concentrating, persisting *and* maintaining pace."  *See* Plaintiff's Brief at PageID.794 (emphasis added).

        Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

PageID.43-45 (emphasis in original).

        In reaching this determination, the ALJ pointed out that:

        The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

PageID.44-45.

        "[I]t is well established that the Paragraph B criteria used in determining whether a claimant meets or equals a listed impairment 'are not an RFC assessment.'" *Palmer v. Commissioner of Social Security*, No. 1:16-cv-660, 2017 WL 2129689 at *3 (W.D. Mich. May 17, 2017) (quoting SSR 96-8p, 1996 WL 374184 at *4 (SSA July 2, 1996)). *See, e.g., Gomez v. Commissioner of Social Security*, No. 1:22-CV-282-DCP, 2024 WL 925546 at *5 (E.D. Tenn. March 4, 2024) ("a finding by the ALJ that Plaintiff has mild or moderate difficulties in concentration, persistence, or pace and in adapting or managing oneself, does not necessarily mean that Plaintiff will have corresponding limitations with regard to her RFC"). As the court observed in *Rauch v. Commissioner of Social Security*, No. 1:18-cv-408, 2019 WL 2996511 (June 20, 2019), *R&R adopted*, 2019 WL 2994506 (W.D. Mich. July 9, 2019), a "paragraph B" finding with respect to CPP does not translate into an RFC assessment:

        The reference to CPP in "paragraph B" is written in the disjunctive, *i.e.*, to meet the listing by showing CPP, the claimant must have an extreme or marked limitation in the ability to "concentrate, persist or maintain pace." *See* Listings 12.04.B.3. and 12.06B.3. "Because three different functions [in paragraph 'B'] are listed in the

> disjunctive, however, a check in the moderate box does not indicate whether the limitation applies to one, two, or all three functions . . . the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3 to determine whether the impairment is severe and meets a listing." *Kraus v. Colvin*, No. 13-C-0578, 2014 WL 1689717 at *15 (E.D. Wis. April 29, 2014).

*Rauch*, 2019 WL 2996511 at *3.  In summary, while the ALJ's determination at step 2 established that plaintiff's alleged depression, anxiety and substance addiction were not severe impairments, it did not make any determination regarding plaintiff's RFC.

Next, the ALJ's RFC evaluation at step 4 addressed plaintiff's non-severe mental impairments.[3]  The ALJ considered opinions from psychologists Dr. Hanson, Dr. Starrett, and Dr. Wheeler.  Dr. Hanson and Dr. Garrett opined that plaintiff had no limitation in CPP and no limitation in adapting or managing oneself:

> In September 2020, psychological consultant Karen Hanson, Ph.D., reviewed the file and provided an opinion for the State agency disability determination service (Ex. 1AA[sic]). Dr. Hanson found the claimant had no limitation in understanding, remembering, or applying information, no limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. George Starrett, Ed.D., affirmed the opinion at the reconsideration level (Ex. 3A). I find these opinions persuasive, as they are largely supported and consistent with the record as a whole, including the claimant's lack of treatment and the consultative examination findings. The claimant reported he got along well with others. He reported the abilities to complete most household chores such as cooking, cleaning, laundry, shopping, and trash removal. He reported having no difficulty managing his own finances. The claimant denied experiencing any mental health issues. He reported his anxiety and depression were being adequately treated with medication and he had no problems. The record overall consistently noted normal mental status examinations (Ex. 5F pg. 5; 9F; 12F; 18F pg. 4; 27F pg. 9, 19, 30). Therefore, these opinions are persuasive.

PageID.49.

---

[3]  *See* 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

Similarly, Dr. Wheeler opined that plaintiff had no difficulty with CPP and no difficulty with adaptation or managing himself:

> Following a psychiatric consultative examination in September 2020, Samantha Wheeler, Ph.D., found the claimant demonstrated no difficulty in understanding, remembering and applying information, no difficulty with concentration, persistence or pace, got along well with others and had no difficulty with social interaction, and had no difficulty with adaptation or managing himself (Ex. 9F). I find this persuasive, as it is largely supported and consistent with the record as a whole, including the claimant's lack of treatment and the consultative examination findings. The claimant reported he got along well with others. He reported the abilities to complete most household chores such as cooking, cleaning, laundry, shopping, and trash removal. He reported having no difficulty managing his own finances. The claimant denied experiencing any mental health issues. He reported his anxiety and depression were being adequately treated with medication and he had no problems. The record overall consistently noted normal mental status examinations (Ex. 5F pg. 5; 9F; 12F; 18F pg. 4; 27F pg. 9, 19, 30). Therefore, this opinion is persuasive.

PageID.49.

Based on this record, the ALJ did not err by excluding plaintiff's step 2 "paragraph B" criteria from the step 4 RFC determination. Accordingly, plaintiff's claim of error is denied.

> **B.     The ALJ violated 20 C.F.R. § 404.1520c by rejecting the opinion of Dr. Nwankwo, the agency's internal medicine physician, without adequate explanation and without properly discussing the regulatory factors of supportability and consistency.**

Plaintiff contests the ALJ's evaluation of the opinion of examining physician Dr. Nwankwo. For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions

and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[4]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source

---

[4] The regulations explain "supportability" as follows:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

Here, the ALJ addressed Dr. Nwankwo's opinion as follows:

> Following a consultative examination in September 2020, Dr. Nwankwo found the claimant had limited range of motions affecting his abilities to bend and stoop. He indicated the evidence supported the claimant's need for a walking aid. He indicated the claimant could stand/walk at least 2 hours due to decreased range of motion of lumbar spine and lumbar and thoracic back pain. He indicated the claimant could sit at least 4 hours due to decreased range of motion and back pain. He indicated there were no assistive devices, but the claimant would benefit from one with long distances. He indicated the claimant could lift/carry less than 10lbs occasionally and frequently secondary to decreased range of motion cervically, cervical fracture, and back pain. He indicated the claimant could never climb or balance due to cervical fracture/range of motion limitation, and could occasionally stoop, kneel, crouch, and crawl due to lumbar and thoracic pain and decreased range of motion. He found the claimant could frequently reach, handle, finger and feel. Dr. Nwankwo found there were limitations to working at heights and around heavy machinery due to decreased range of motion of neck and back, cervical fracture, and lumbar disc disease. He stated there were no limitations to working around extremes of temperature, chemicals, dust/fumes/gasses, or excessive noise (Ex. 12F). I do not find this persuasive, as it is less supported and consistent with the record as a whole. The claimant was typically noted to be in no distress or pain. Overall, he was noted to exhibit normal gait, normal upper and lower extremity motor strength, and intact sensation. Therefore, the record as a whole does not support his need for a walking aid, reduced standing/walking, or never climb or balance. While the claimant is limited in his ability to reach and push/pull, there was no indication he required handling/fingering limitations. Furthermore, additional environmental limitations are needed to address the claimant's lower extremity edema and back pain triggers. (Ex. 16F pg. 28; 18F pg. 4, 6; 20F pg. 1, 5, 13; 23F; 27F pg. 8, 19, 22, 30). Therefore, this is not persuasive.

PageID.50.

Plaintiff contends that the ALJ's evaluation of Dr. Nwankwo did not address the issue of supportability as required by the regulations and that the ALJ's rationale "fails to shed any light on how these isolated normal findings undermine the opinion of the internal medicine

specialist chosen by the agency to evaluate the extent of Plaintiff's impairment."  Plaintiff's Brief

(ECF No. 11, PageID.798).

The regulations explain "supportability" as follows:

The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1).  Here, Dr. Nwankwo supported his opinions with a rather extensive

narrative report of plaintiff's physical examination, which included range of motion tests for

plaintiff's cervical spine and lumbar spine.  PageID.551-557. The ALJ does not provide specific

findings in the record which demonstrate that the doctor's opinion is unsupported.  An ALJ "must

articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace

the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely

'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of

evidence.  It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health*

*and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  In this case, the Court cannot trace the

path of the ALJ's reasoning for rejecting the doctor's opinion. Accordingly, this matter will be

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the

Commissioner is directed to re-evaluate Dr. Nwankwo's opinion.

### C.    The ALJ violated 20 C.F.R. § 404.1529 by rejecting plaintiff's statements about the intensity, persistence, and limiting effects of his physical symptoms, without properly evaluating his statements in relation to the objective medical and other evidence in the record.

As discussed, plaintiff suffered injuries in an automobile accident and had severe

impairments of: degeneration of the lumbar, thoracic, and cervical spine; cervical and lumbar

fractures; and chronic deep vein thrombosis.  Plaintiff contends that the ALJ's decision does not

reveal "any actual inconsistencies" between his testimony regarding the symptoms which arose from these impairments and the evidence in the administrative record.  *See* Plaintiff's Brief at PageID.801.

We recognize that "[a]n individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability."  *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis in original).  Rather, objective medical evidence that confirms the alleged severity of the symptoms is required.  *See Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989).  Thus, a claimant "may rely in part on her own testimony *in combination with* objective medical evidence in order to establish that she is disabled."  *Cohen*, 964 F.2d at 529 (emphasis in original).

Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of the disabling symptoms. *See  Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.  Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id*. (internal citations omitted).  *See* 20 C.F.R. § 404.1529 ("How we evaluate symptoms including pain").

"It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis."  *Pratt v. Commissioner of Social Security*, No. 1:12 -cv-1084, 2014

WL 1577525 at *3 (W.D. Mich. April 21, 2014) (listing cases).  The referenced factors appear in

20 C.F.R. § 404.1529(c)(3):

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Here, The ALJ noted that on the alleged onset date (October 23, 2019) plaintiff was

involved in a motor vehicle accident in which he sustained injuries including compression fractures

at C2-C3 and L3.  PageID.47.  The ALJ summarized plaintiff's symptoms as follows:

> The claimant alleged disability due to two fractured vertebras in the neck, one fractured vertebra in the back, anxiety, depression, and high blood pressure. He further asserts these conditions affect his abilities to sit, walk, stand, and complete tasks (Ex. 1A; 25E). After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

PageID.47.

After reviewing plaintiff's medical records (PageID.47-48), the ALJ stated:

> Accordingly, I find it consistent with the record that the claimant has been subject to a degree of pain and functional limitations as a result of his severe impairments.  However, the record does not support he is precluded from all work activity.  Rather, the assessed residual functional capacity accommodates the claimant's reports of increased neck and back pain by limiting him to lifting/carrying only 10 pounds with limitations on the performance of postural maneuvers and exposure to workplace hazards. He is also limited in his abilities to reach, push/pull with the bilateral upper and lower extremities, and have exposure to environmental factors, which also accommodates his lower extremity edema. As the claimant was consistently noted to exhibit a normal gait, he is limited to standing/walking 6 hours in an 8-hour day.

In sum, the claimant's subjective allegations do not fully corroborate his alleged limitations when compared to the evidence of the record. For example, the medical evidence of record largely reflects objective examination findings that are inconsistent with the claimant's extent of reported symptoms. In addition, the claimant has described daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms. While the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest he is far more capable than he alleges and undermines the reliability of his allegations of disabling functional limitations.

PageID.48.

The ALJ's decision is based in large part on plaintiff's daily activities. However, the ALJ provided no details regarding plaintiff's daily activities, how plaintiff's symptoms affect particular activities, and how plaintiff's symptoms are not consistent with the medical evidence and other evidence in the record. Similarly, the ALJ provides no discussion of the underlying facts to support his conclusion that, "[w]hile the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest he is far more capable than he alleges and undermines the reliability of his allegations of disabling functional limitations." In short, the Court cannot trace the path of the ALJ's reasons for rejecting plaintiff's evidence regarding the intensity, persistence, and limiting effects of the symptoms. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate intensity, persistence, and limiting effects of plaintiff's symptoms arising from his impairments.

## IV.    CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed (1) to re-evaluate Dr. Nwankwo's opinion, and (2) to re-evaluate intensity, persistence,

and limiting effects of plaintiff's symptoms arising from his impairments.  A judgment consistent with this opinion will be issued forthwith.


Dated: March 12, 2024                          /s/ Ray Kent
                                               RAY KENT
                                               United States Magistrate Judge